B27 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT
District of Arizona

In re Jeffrey D. Viles          ,
　　　Debtor

Case No. 12-24390
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: CAPITAL ONE, N.A. - YAMAHA

2. Amount of the debt subject to this reaffirmation agreement:
   $ 6,766.66 on the date of bankruptcy   $6,766.66 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: _____% prior to bankruptcy
   0 % under reaffirmation agreement ( ✓ Fixed Rate ____ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 141.00 per month for 48 months

5. Collateral, if any, securing the debt: Current market value: $ 6766.66
   Description: VI5Y4AH10YX7A023807,VIN5Y4AM08Y67A008764

6. Does the creditor assert that the debt is nondischargeable? ___ Yes ✓ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

Debtor's Schedule I and J Entries | Debtor's Income and Expenses as Stated on Reaffirmation Agreement

7A. Total monthly income from $ 5052.75     7B. Monthly income from all $ 5052.75
    Schedule I, line 16                         sources after payroll deductions

8A. Total monthly expenses $ 4989           8B. Monthly expenses $ 4989
    from Schedule J, line 18

9A. Total monthly payments on $ 475         9B. Total monthly payments on $ 475
    reaffirmed debts not listed on              reaffirmed debts not included in
    Schedule J                                  monthly expenses

　　　　　　　　　　　　　　　　　　　　　　　10B. Net monthly income $ 63.75
　　　　　　　　　　　　　　　　　　　　　　　(Subtract sum of lines 8B and 9B from
　　　　　　　　　　　　　　　　　　　　　　　line 7B. If total is less than zero, put the
　　　　　　　　　　　　　　　　　　　　　　　number in brackets.)

11. Explain with specificity any difference between the income amounts (7A and 7B):
_____
_____

12. Explain with specificity any difference between the expense amounts (8A and 8B):
_____
_____

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

_____   _____
Signature of Debtor (only required if    Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)              required if line 11 or 12 is completed)

## Other Information

☐ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: _____
_____

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
_____ Yes        __X__ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
_____ Yes        _____ No

## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Signature

_Jennifer Pursley_
Print/Type Name & Signer's Relation to Case

> Check one.
> ☐ Presumption of Undue Hardship
> ☒ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
_____ District of Arizona ____

In re _____Jeffrey D. Viles_____,   Case No. 12-24390_____
            *Debtor*

                                                                                 Chapter 7_____

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** _CAPITAL ONE, N.A. - YAMAHA_____

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: ____Secured revolving account____

                                                                                                               *For example, auto loan*

B. ***AMOUNT REAFFIRMED:***    $_____6766.66_____

    The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

    *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is ____0__%.

    *See definition of "Annual Percentage Rate" in Part V, Section C below.*

    This is a *(check one)*   ☒ Fixed rate         ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☑   $ __141.00__ per month for __48__ months starting on __20/03/2013__ .

☐   Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

_____
_____
_____

E. Describe the collateral, if any, securing the debt:

Description:           __VI5Y4AH10YX7A023807,VIN5Y4AM08Y67A008764__
Current Market Value   $__6766.66__

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral?   $ __6,766.66__

☐ No. What was the amount of the original loan?          $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 6,766.66 | $ 6766.66 |
| Annual Percentage Rate | _____ % | 0 % |
| Monthly Payment | $ _____ | $ 141.00 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

_____
_____

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.    ☐ Yes    ☑ No

B. Is the creditor a credit union?

   Check one.    ☐ Yes    ☑ No

B240A, Reaffirmation Documents                                                                                             Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

 1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                 $ 5052.75

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                             $ 4989

   c. Amount available to pay this reaffirmed debt (subtract b. from a.) $ 141

   d. Amount of monthly payment required for this reaffirmed debt        $ 141

   *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

 2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   ☒ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

   _____
   _____
   _____

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   ☒ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 1/24/13     Signature _____
                                    *Debtor*

Date 1/24/13     Signature _____
                                    *Joint Debtor, if any*


**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  CAPITAL ONE, N.A. - YAMAHA          C/O Bass & Associates, P.C., 3936 E. Ft. Lowell Ste 200, Tucson, AZ, 85712
                *Print Name*                                               *Address*

  Jennifer Pursley                      _____  2/6/13
  *Print Name of Representative*              *Signature*                 *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _____  Signature of Debtor's Attorney_____

                 Print Name of Debtor's Attorney _____

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

A.     DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.*

C. **DEFINITIONS**

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

B240B (Form B240B) (12/09)

# UNITED STATES BANKRUPTCY COURT
_____ District of Arizona_____

In re Jeffrey D. Viles_____,          Case No. 12-24390_____
      *Debtor*

                                     Chapter 7_____

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because *(provide any additional relevant reasons the court should consider)*:

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

    ☑ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

    ☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

Signed:_____
       *(Debtor)*

       */s/ [signature]*
       *(Joint Debtor, if any)*

Date: 01-24-13

# United States Bankruptcy Court
## District of __Arizona__

In re _Jeffrey D. Viles_____,  Case No. __12-24390__
　　　　　　　　Debtor　　　　　　　　　　　Chapter __7__

## ORDER ON REAFFIRMATION AGREEMENT

　　　The debtor(s) _____ has (have) filed a motion for approval of the reaffirmation agreement dated _____ made between the debtor(s) and creditor _____. The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtor(s) and the creditor on _____ (date).

COURT ORDER:　　☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtor(s) or a dependent of the debtor(s) and as being in the best interest of the debtor(s).

　　　　　　　　☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation agreement described above.

　　　　　　　　☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

　　　　　　　　☐ The court disapproves the reaffirmation agreement under 11 U.S.C. § 524(m).

　　　　　　　　☐ The court does not approve the reaffirmation agreement.

　　　　　　　　　　　　　　　BY THE COURT

Date: _____　　　　　　_____
　　　　　　　　　　　　　　　　　　_United States Bankruptcy Judge_

# Yamaha Motor Corporation, USA Card Program

1750

Application Type: A married person may apply for individual credit, you are applying for:
- ☐ INDIVIDUAL CREDIT, complete only individual section.
- ☐ JOINT CREDIT, with another person, complete entire application.

## APPLICANT (Please Print)

Applicant's Driver's License Number: B 59
State of Issue: AZ
Date of Issue: 10/17/2001
Expiration Date: 8/19/2036

First Name: JEFFREY
Middle Initial: D.
Last Name: VILES
Social Security Number: ___-__-1859
Date of Birth (MM/DD/YYYY): /71

Address: PRIMAVERA LOOP
Apt. #:
City: BHC
State: AZ
Zip Code: 86426
Home Phone: -7872

Work Phone: -9200
Housing Status: ☒ Buyer/Owner ☐ Rent/Lease ☐ Other/Misc.
Annual Income* (Gross): $65,000
Check if you have a: ☒ Checking Account ☒ Savings Account
E-Mail Address (Optional):

Date of Residence (MM/YYYY): 8/1997
Employer Name: BULLHEAD CITY POLICE DEPT
Date of Employment (MM/YYYY): 8/1997

For WI Residents Only: Check box if you are married: ☐

## JOINT APPLICANT or if you are a MARRIED WISCONSIN RESIDENT

Joint Applicant's Driver's License Number: 3537
State of Issue: AZ
Date of Issue: 8/15/97
Expiration Date: 8/12/2031
E-mail Address (Optional):

First Name: LORRAE
Middle Initial: L
Last Name: VILES
Social Security Number: ___-__-3537
Date of Birth (MM/DD/YY): /971

Address: PRIMAVERA LOOP
Apt. #:
City: BHC
State: AZ
Zip Code: 86426
Home Phone: 872

Work Phone: -9200
Annual Income* (Gross): $35,000
Date of Residence (MM/YYYY): 8/1997
Employer Name: BULLHEAD City Police
Date of Employment (MM/YYYY): 7/2006

### PROTECT YOUR ACCOUNT WITH the YP³ˢᴹ Yamaha Payment Protection Program (referred to below as YP³ˢᴹ) AN OPTIONAL MONTHLY DEBT CANCELLATION PROGRAM.

If you enroll in our optional YP³ program, your monthly credit card balance or a portion of your balance may be cancelled in the case of a qualifying Total Disability, Involuntary Unemployment, or Loss of Life event. For Total Disability, the maximum balance that may be cancelled is $300 per month, up to $10,000 and, for Involuntary Unemployment, up to $300 per month for six months. For Loss of Life, the maximum balance that can be cancelled is $10,000. To receive a cancellation for Involuntary Unemployment or Total Disability, you must be employed full-time (but not self-employed, working for a spouse or employed on a part-time basis) and working 30 hours or more per week at a single job on the date the event occurs. YP³ is not insurance and is unavailable in Mississippi, Guam, the Virgin Islands, Puerto Rico and Canada.

YES, please enroll me, the primary cardholder, in the optional YP³ monthly debt cancellation program. I authorize the monthly charge to my account when I have a balance. I have received and read the YP³ Summary. I understand that your evaluation of my credit card application will not be influenced by whether I choose to enroll, and I am free to cancel at any time.

NO, I do not wish to enroll at this time.

### APPLICANT(S) SIGNATURE REQUIRED BELOW

All of the information furnished on this application is, to the best of your knowledge, complete and accurate. You agree that we may obtain a credit bureau report on you and may check any of the information provided on this application from whatever source we choose. By completing and signing this application, you are applying for a credit limit in the highest amount we deem appropriate, regardless of any initial sale amount, and you are requesting a Card issued to you by us which will allow you to make purchases under this Account. By a) signing, using or permitting others to use this Card; b) signing or permitting others to sign sales slips; c) making or permitting others to make purchases by telephone, Internet, or any other means, you agree to the terms and conditions of the Cardholder Agreement and Disclosure Statement, (which includes an arbitration provision) which shall be sent to you with the credit card and to the Tiered APR Disclosures, which you acknowledge receiving and which are incorporated herein by reference. You have read and received a copy of your Important Terms and Tiered APR Disclosure before making any purchase under this Account. Terms are attached. If this is a joint credit application, you understand that each applicant has the right to use the Account and that you shall be liable for all purchases made under the Account by any joint applicant. You grant us a purchase money security interest in the goods purchased on your Account. You understand that we may provide information relating to our transactions and experiences with you to others, including Yamaha, whether or not you are approved for credit. You may prohibit the sharing of such information by calling us at 1-800-365-3804.

Applicant's Signature: Jeffrey D. Viles
Date (MM/DD/YY): 11/14/2006

Joint Applicant's Signature: Lorrae Lynn Viles
Date (MM/DD/YY): 11/14/06

6022-YAMAHA-US-20 (7-05)

### TIER VERIFICATION

This section must be completed when the applicant is approved

YOU ACKNOWLEDGE YOU HAVE RECEIVED AND READ THE TIER ① 2 3 4 (circle one) STANDARD APR DISCLOSURE.

Applicant's Signature: X Jeffrey D. Viles
Date (MM/DD/YY): 11/14/2007
ACCOUNT #: 8 2 9 6

| Field | Value |
|---|---|
| ACCOUNT # | 8 2 9 6 |
| ORG # | 1 7 6 |
| Merchant/Store # | 0 2 2 2 3 2 0 9 0 |
| Cardholder's Name | Jeffrey Viles |
| Merchant's/Dealer's Name | Resort Recreation Inc. |
| Credit Plan | 6 0 0 2 4  N X |

**For A Promotional Sale ONLY Complete TERM & TYPE**

Select and Fill in Proper TERM (ONLY ONE):
- ☐ Your promotion will expire in __24__ months (from the date of possession); OR
- ☐ Your promotion will expire in __/__ (month, year).

Select and Fill in Proper TYPE (ONLY ONE):
- ☐ Delayed Payment. During the specified period, no Minimum Monthly Payment is due on your purchase. Finance Charges will be imposed.
- ☐ Waived Finance Charge. Each month, you are required to pay the Minimum Monthly Payment. During the specified period no Finance Charges will be imposed on your purchase if your Account is kept current.
- ☐ Delayed Payment/Waived Finance Charge. During the specified period, no Minimum Monthly Payment is due and no Finance Charges will be imposed on your purchase.
- ☐ Same As Cash/Minimum Monthly Payments Required. Each month, you are required to pay the Minimum Monthly Payment. During the specified period, Finance Charges will accrue on your purchase. However, If your Account is kept current and you pay the entire purchase amount before the promotional due date, no Finance Charges will be imposed on the purchase.
- ☐ Same As Cash/Minimum Monthly Payments Delayed. During the specified period, Finance Charges will accrue on your purchase. However, if you pay the entire purchase amount before the promotional due date, no Finance Charges will be imposed on the purchase. No Minimum Monthly Payments are required on your purchase during the specified period.
- ☑ Reduced Rate. During the specified period, a reduced periodic rate of __8.9__% APR will be applied to your purchase, if your Account is kept current.

For details of all Promotional Credit Plans, please refer to your Cardholder Agreement and Disclosure Statement.

Cardholder acknowledges receipt of a completed copy of this Sales Slip and the purchase of the goods and/or services described and promises to pay the Unpaid Balance plus any Finance Charges and fees due in accordance with the terms of the Cardholder Agreement and Disclosure Statement.

X _Jeffrey D. Viles_ (CARDHOLDER'S SIGNATURE)

Form 6013 (03/00)

☑ NEW ☐ ADD-ON
DELIVERY INSTRUCTIONS: ☐ PICK-UP ☐ INSTALLED ☐ DELIVERED

DATE OF DELIVERY/INSTALLATION: 11/14/06

| QUAN. | DESCRIPTION | SALE PRICE |
|---|---|---|
| | PRODUCT LINE: 1720 | |
| | MODEL NO. YFM 35 GWL | 4000.00 |
| | VIN/HULL/SERIAL NO. 5Y4AH10YX7A023807 | |
| | ☐ ALREADY ELECTRONICALLY FUNDED | |
| | Freight, prep, Set-up | 249.00 |
| | Service Contract | 396.00 |
| | Doc Fee | 100.00 |
| | DMV | 15.00 |

DATE OF SALE: 11-14-06
AUTHORIZATION CODE: 35655

| | |
|---|---|
| SUB TOTAL | 4760.00 |
| SALES TAX | 314.00 |
| CASH PRICE | 5074.00 |
| CASH DOWN PAYMENT | 0 |
| UNPAID BALANCE (AMOUNT FINANCED) | 5074.00 |

SALES NO. 1621588

HRS COPY

# ARIZONA CERTIFICATE OF TITLE

**Motor Vehicle Division** — ADOT
48-7200 R10/08 www.azdot.gov

Inventory Control: 22453823

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| 5Y4AH10YX7A023807 | 2007 | YAMA | | ATV |

| First Registered | List Price | Mobile Home Manufacturer | | Unit Number |
|---|---|---|---|---|
| 00/0000 | 000000 | | | |

CAPITAL ONE N.A.
PO BOX 660070
SACRAMENTO CA 95866-0070

| Title Number | Issue Date | Film Number | Odometer Miles (no tenths) |
|---|---|---|---|
| J002006328046 | 11242006 | G328J00232 | 0000000  X |

| Previous Title Number | State | Issue Date | Previous Film Number | |
|---|---|---|---|---|
| MCO | | 00000000 | ORIGINAL | |

A - Actual Mileage
B - Mileage in excess of the odometer mechanical limits
C - NOT Actual Mileage, WARNING ODOMETER DISCREPANCY

Arizona Brands

| Previous Brand | State Previous Brand | State Previous Brand | State Other States With Brands |
|---|---|---|---|

**Owners/Lessees**

JEFFREY DUANE VILES

**Lienholders**

FIRST LIEN -
HSBC BANK NEVADA NA
P O BOX #660070

LIEN DATE:  11142006
SACRAMENTO     CA  95866

**LIEN RELEASE**

| Lienholder Name | | Acknowledged before me this date | Notary Public Signature | |
|---|---|---|---|---|
| Lien Amount | Lienholder Signature | Date | County | State  Commission Expires |

**VOID WITHOUT EAGLE WATERMARK OR IF ALTERED OR ERASED**

## BILL OF SALE

This BILL OF SALE (the "Bill of Sale") dated May 1, 2012, is by and among HSBC Finance Corporation, a Delaware corporation, HSBC Retail Services, Inc., a Delaware corporation, HSBC Bank Nevada, N.A., a national banking association, HSBC Card Services Inc., a Delaware corporation, HSBC Receivables Acquisition Company I, a Delaware corporation and HSBC Receivables Funding Inc. II, a Delaware corporation (each, a "Transferring Entity"), in favor of Capital One, National Association, a national banking association ("CONA"), and Capital One Bank (USA), National Association, a national banking association ("COBNA"). Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Agreement (as defined below).

WHEREAS, each of CONA and COBNA is a wholly owned Subsidiary of Capital One Financial Corporation ("Purchaser");

WHEREAS, Purchaser, HSBC Finance Corporation, HSBC USA Inc. and HSBC Technology & Services (USA) Inc. are parties to that certain Purchase and Assumption Agreement, dated as of August 10, 2011 (the "Agreement");

WHEREAS, pursuant to Section 2.1(a) of the Agreement, effective as of the Effective Time, each Seller, as applicable, is to sell, convey, transfer, assign and deliver, or cause one or more of its Subsidiaries to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser is to purchase and accept from each Seller or its applicable Subsidiaries, all of each such Selling Entity's right, title and interest in, to and under the Acquired Assets that are tangible personal property (the "Applicable Acquired Assets");

WHEREAS, pursuant to Section 10.2 of the Agreement, Purchaser may assign its right under the Agreement to acquire any asset to any wholly owned Subsidiary without the prior written consent of any other party to the Agreement and has assigned its right to acquire the Applicable Acquired Assets to CONA or COBNA, as applicable; and

WHEREAS, pursuant to Sections 3.2(c) and 3.3(b) of the Agreement, the parties desire to execute and deliver at the Closing this Bill of Sale to evidence the sale, conveyance, transfer, assignment and delivery of the Applicable Acquired Assets owned by the Transferring Entities to Purchaser and/or its wholly owned Subsidiaries as of the Closing Date.

NOW, THEREFORE, in consideration of the payment by Purchaser and/or its wholly owned Subsidiaries of the Purchase Price and the assumption by Purchaser and/or its wholly owned Subsidiaries of the Assumed Liabilities for the sale, conveyance, transfer, assignment and delivery of the Acquired Assets owned by the Selling Entities, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Transferring Entity, intending to be legally bound, does hereby sell, convey, transfer, assign and deliver to CONA and COBNA, and their successors and assigns, in accordance with the allocations set forth on Annex A hereto, all of such Transferring Entity's right, title and interest in, to and under the Applicable Acquired Assets owned by it free and clear of all Liens (except for Permitted Liens); TO HAVE AND TO HOLD unto CONA and COBNA (in accordance with the allocations set forth on Annex A hereto), their successors and assigns, as applicable, to their own use and benefit forever, all of the Applicable Acquired Assets hereby sold, assigned, transferred, conveyed and delivered as of the Closing.

THE PARTIES FURTHER COVENANT AND AGREE AS FOLLOWS:

a. From time to time each Transferring Entity and its successors and assigns shall, and shall cause its Subsidiaries to, without further consideration, cooperate, execute and deliver all such further bills of sale, assignments or other instruments of conveyance and transfer, and take such actions, all as may be reasonably requested by CONA and COBNA, and their successors or assigns, in order to carry out the sale, assignment, conveyance, transfer and delivery of the Applicable Acquired Assets covered by this Bill of Sale as contemplated in this Bill of Sale and the Agreement.

b. This Bill of Sale shall become effective as of the Effective Time at the Closing pursuant to the terms of the Agreement. Nothing in this Bill of Sale shall be deemed to constitute an agreement to sell, convey, transfer, assign or deliver to Purchaser or its Subsidiaries any Applicable Acquired Asset (or portion thereof) prior to the Effective Time.

c. This Bill of Sale is given pursuant to the provisions of the Agreement and the sale, conveyance, transfer, assignment, and delivery of the Applicable Acquired Assets hereunder are made subject to the terms and conditions of the Agreement and shall be construed consistently therewith. Nothing in this Bill of Sale, express or implied, is intended to or shall be construed to supersede, modify, replace, amend, rescind, waive, expand or limit in any way the rights of the parties under, and the terms of, the Agreement. In the event that any provision of this Bill of Sale is construed to conflict with a provision in the Agreement, the parties agree that the provision in the Agreement shall be controlling.

d. The following Sections of the Agreement are incorporated into this Bill of Sale by reference, to be applied and construed consistently with the application of such Sections in the Agreement as if such Sections were set forth herein: Sections 10.1, 10.2, 10.3, 10.4, 10.5, 10.6, 10.7, 10.10 and 10.13.

[Signatures Appear on the Following Page]

IN WITNESS WHEREOF, the parties have executed this Bill of Sale as of the date first written above.

[signature pages have been distributed separately]

HSBC FINANCE CORPORATION

By: _____
Name: Gregory T. Zeeman
Title: Executive Vice President and Chief Operating Officer, USA

[Signature Page Bill of Sale]

[Signature Page to Bill of Sale]

HSBC RETAIL SERVICES INC.

By: _____/s/ Mike Reeves_____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial Officer and Treasurer

*[Signature Page to Bill of Sale]*

HSBC BANK NEVADA, N.A.

By: _____/s/ Mike Reeves_____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial Officer and Treasurer

*[Signature Page to Bill of Sale]*

HSBC CARD SERVICES INC.

By: _____/s/ Mike Reeves_____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial Officer and Treasurer

*[Signature Page to Bill of Sale]*

HSBC RECEIVABLES ACQUISITION COMPANY I

By: _____/s/ Mike Reeves_____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial Officer and Treasurer

*[Signature Page to Bill of Sale]*

HSBC RECEIVABLES FUNDING INC. II

By: _____
Name: Mike Reeves
Title: Executive Vice President, Chief Financial Officer and Treasurer

CAPITAL ONE, NATIONAL ASSOCIATION

By: _____
Name: Murray P. Abrams
Title: Executive Vice President, Corporate Development

*[Signature Page to Bill of Sale]*

*[Signature Page to Bill of Sale]*

CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION

By: _____
Name: Murray P. Abrams
Title: Executive Vice President, Corporate Development

### Annex A

### Allocations

1. The following Applicable Acquired Assets are hereby assigned to COBNA but only to the extent such Applicable Acquired Assets relate to the products set forth on Schedule A hereto (provided that any such Applicable Acquired Asset that is not fully separable between COBNA and CONA based on the products set forth on Schedule A shall not be assigned to COBNA and is instead hereby assigned to CONA in accordance with paragraph (2) below):

*Acquired Assets*

   i. All CRS Accounts and all Gross Receivables and Accrued Interest and Fees related to the CRS Accounts, and all Charged Off Accounts and the right to any recoveries or collections with respect thereto;
   ii. All CRS Account Agreements, pending applications for CRS Accounts and outstanding solicitations for CRS Accounts;
   iii. All loans associated with CRS Accounts (other than the Excluded Accounts);
   iv. The right to receive Interchange Fees and annual or other fees from Borrowers under the CRS Accounts, including the *pro rata* portion of any annual or other fees from Borrowers under the CRS Accounts for any period after the Effective Time;
   v. The *pro rata* portion of any fees paid in connection with the CRS Business for any period after the Effective Time;
   vi. the Books and Records and Cardholder List;
   vii. All BINs and ICAs used for the CRS Accounts;
   viii. Any security deposits related to Acquired Assets (if any);
   ix. Rights to provide the Enhancement Services and the right to provide enhancement services currently offered by the Sellers in connection with the CRS Business through third parties or Affiliates of Sellers that are not Selling Entities; and
   x. The Other Specified Assets that are: (1) loans without recourse, (2) contra credit balances, (3) other miscellaneous receivables and (4) unbilled and accrued interest less the *pro rata* portion of annual or other fees.

2. All of the Applicable Acquired Assets other than (i) the Transferred Intellectual Property and (ii) the Applicable Acquired Assets that are transferred to COBNA pursuant to paragraph (1) above are hereby transferred to CONA.

*[Signature Page to Bill of Sale]*

Schedule A

Products

1. American DreamCard
2. Cash Rewards
3. Client 5221
4. DAMARK (containing the Damark Visa logo but not the Damark Internat'l – inactive logo)
5. Direct Merchants Bank Discover Network Card
6. Direct Reward Platinum Discover Network Card (Organic & Secondary)
7. Direct Rewards Platinum MasterCard
8. DMB
9. Household Bank
10. Household Bank - unsecured
11. Household Bank MasterCard (containing the HSBC MasterCard logo but not the Household Bank MasterCard logo)
12. Household Bank Refund Rewards Buying Card
13. Household Bank Secured
14. Household Bank Visa
15. HSBC
16. HSBC American Express
17. HSBC Discover Network Card
18. HSBC Platinum MasterCard
19. HSBC Platinum Visa
20. Metris Co
21. Orchard Bank Standard Secured
22. Orchard Bank Unsecured
23. Platinum MasterCard - Unbranded
24. Platinum Visa - Unbranded
25. Premier World MasterCard
26. Red Hat Society

```
mdmisc     ARIZONA MOTOR VEHICLE RECORD AS OF 02/05/2013           PIM0505

NMT4RV  -051  TAB         CAT R VIN 5Y4AM08Y67A008764        EXP    00 0000
YAMA  2007 ATV  VMO R66   FLP 000000 GVW 000000 MFR    0000 FUEL G OD 0000000
OWNER  JEFFREY,DUANE,VILES

M/ADR       PRIMAVERA LOOP                                  PRD
       BULLHEAD CITY              AZ 864269279   CO 08      FNED
S/ADR                                                       V/COLOR1
                                               00           V/COLOR2
COMMENTS

TITLE NO J002006328045 ST AZ DATE 01172013   FILM G328J00231
LIEN1 HSBC BANK NEVADA NA                       DT 11142006 L/S
   ADR PO BOX 660070          SACRAMENTO           CA 958660070
LIEN2 NONE                                      DT          L/S
   ADR
LIEN3 NONE                                      DT          L/S
   ADR
SC:
 27-OWN,VEH,TTL RECORD
```